IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PORFORIO MORENO MUNOZ,** ) <br> ) <br> **Petitioner**, ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES OF AMERICA,** ) <br> ) <br> **Respondent**. ) <br> _____) | No. CV-F 03-6255 AWI <br><br> (No. CR-F 02-5422 REC) <br><br> ORDER ON PETITIONER'S <br> REQUEST FOR RELIEF UNDER <br> 28 U.S.C. § 2255 |

In this case, petitioner Porforio Moreno Munoz ("Petitioner") seeks relief under 28 U.S.C. § 2255 from the sentence of 77 months that was imposed by the court on August 11, 2003, following Petitioner's entry of a plea of guilty to one count of 8 U.S.C. § 1326, deported alien found in the United States. Petitioner claims that he has derivative United States citizenship through his father, Juan Silva Moreno ("Juan"). Numerous continuances have been granted in this case for the purposes of obtaining records and information to aide Petitioner to establish his contention of citizenship. Continuances were also granted for Petitioner to obtain a certificate of citizenship from the United States Bureau of Citizenship and Immigration Services ("BCIS"). The BCIS initially denied Petitioner's request and determined that he is a citizen of Mexico. That decision was then affirmed on administrative appeal. The United States (Repondent") has filed a supplemental reply, as per a stipulation, which more or less tracks the reasoning of the BCIS determination. For the reasons, that follow, Petitioner's request for relief will be denied.

**Legal Standard**

28 U.S.C. § 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir.1996). Accordingly, an evidentiary hearing is required if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief. United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004). Mere conclusory statements or statements that are inherently incredible in a § 2255 motion, however, are insufficient to require a hearing. Howard, 381 F.3d at 879; United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980).

**Petitioner's Argument**

Petitioner argues that he has derivative citizenship through his father Juan. Given the law applicable at the time of Petitioner's birth on September 15, 1967, the issue in this case is whether Juan was physically present in the United States for a period of 10 years prior to 1967. See 8 U.S.C. § 1401(a)(7) (Ed. 1966). Social Security records establish that Juan earned income in the United States from 1960 through 1967. The State Department determined that Juan was a United States citizen by operation of § 205 of the Nationality Act of 1940. Section 205 relates to § 201 of the Nationality Act. Section 201 then provided that, in order to retain citizenship, "the child must reside in the United States . . . for a period or periods totaling five years between the ages of thirteen and twenty-one years." Juan was born in 1944, and thus, turned thirteen in 1957 and twenty-one in 1965. Because the State Department acknowledged Juan's citizenship in

1980, the State Department must have determined that Juan retained his citizenship. Thus, between 1957 and 1965, five of those years Juan was residing in the United States. These additional years, when added to the seven years established by the social security records, are sufficient to meet the requirement of 10 years of physical presence prior to Petitioner's birth. Since the 10 year requirement is met, Petitioner is a citizen through operation of 8 U.S.C. § 1401(a)(7). Since Petitioner is a United States citizen, it is legally impossible for him to be guilty of violating 8 U.S.C. § 1326.

**Respondent's Argument**

In pertinent part, Respondent argues that Petitioner has failed to establish that Juan was physically present in the United States. As the BCIS noted, Petitioner misreads §§ 201 and 205 of the Nationality Act. It was determined that Juan was a citizen under the second paragraph of § 205. That section does not contain a five year residency requirement for retaining citizenship. Thus, Petitioner is left with only the social security records and those records, at best, show physical presence in the United States for 7 years. Because Petitioner cannot establish that Juan was present in the United States for 10 years prior to Petitioner's birth in 1967, as BCIS determined, Petitioner is a citizen of Mexico and not the United States. His conviction under 8 U.S.C. § 1326 is not infirm and relief under 28 U.S.C. § 2255 should be denied.

**Discussion**

"The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth." Ablang v. Reno, 52 F.3d 801, 803 (9th Cir. 1995); Runnett v. Shultz, 901 F.2d 782, 783 (9th Cir. 1990). Petitioner was born in 1967 and claims citizenship through 8 U.S.C. § 1401(a)(7). The parties agree that the controlling statute in 1967 in relevant part read:

> a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years .
> . . .

8 U.S.C. § 1401(a)(7) (1966);[1] <u>Solis-Espinoza v. Gonzales</u>, 401 F.3d 1090, 1092-1093 (9th Cir. 2005). The parties are in agreement that the key issue in this case is whether Juan was physically present in the United States for a period of 10 years prior to September 15, 1967.

Petitioner argues that social security records indicate that Juan was physically present in the United States from 1960 through 1967 (and beyond). However, the records submitted to this Court cover, in pertinent part, the years 1960, 1963, 1964, 1965, 1966, and 1967. <u>See</u> Court's Docket Doc. No. 33 (Exhibit 4). There are no social security records for 1961 or 1962. <u>Id.</u> Although Petitioner does not address the lack of records for 1961 and 1962, to otherwise make up for the shortfall of years, Petitioner relies on §§ 201(g) and 205 of the Nationality Act of 1940.[2]

Section 201 of the Nationality Act defined various categories of citizens and § 205 dealt specifically with illegitimate children and certain of the categories identified in § 201. <u>See</u> <u>T. v. Bell</u>, 478 F.Supp. 828, 830 (W.D. Pa. 1979). Petitioner identifies section 201(g) as the pertinent statute. That section read in relevant part:

> A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of sixteen years, the other being an alien: Provided, That in order to retain such citizenship, the child must reside in the United States or its outlying possessions for a period or periods totaling five years between the ages of thirteen and twenty-one years. . . .

Nationality Act of 1940, § 201(g); <u>Runnett</u>, 901 F.2d at 783.

Section 205 of the Nationality Act of 1940 read:

> The provisions of section 201 subsections (c), (d), (e), and (g), . . . hereof apply, as of the date of birth, to a child born out of wedlock, provided the paternity is established during minority, by legitimation, or adjudication of a competent court.
>
> In the absence of such legitimation or adjudication, the child . . . if the mother had the nationality of the United States at the time of the child's birth, and had previously resided in the United States or one of its outlying possessions, shall be held to have acquired at birth her nationality status.

---

[1] All further references to § 1401(a)(7) refer to 8 U.S.C. § 1401(a)(7) as it existed in 1967.

[2] "The Nationality Act of 1940 was repealed in 1952, by statutes which have themselves since been repealed." <u>Ablang</u>, 52 F.3d at 803 n.2. Any further references to § 201(g) or § 205 refer to the Nationality Act of 1940.

Nationality Act of 1940, § 205; Ablang, 52 F.3d at 803.

Thus, for children born out of wedlock, the requirements of citizenship very depending on which parent was a citizen of the United States. The Ninth Circuit has explained the operation of § 205 and citizenship:

> The [Nationality] Act thus requires that a child born abroad and out of wedlock to a United States citizen father and an alien mother establish paternity by the age of majority in order to be deemed a United States citizen. A child born abroad and out of wedlock to a United States citizen mother and alien father is deemed a United States citizen provided the mother has met the residency requirement; nothing further is required of the child.

Ablang, 52 F.3d at 803.

Petitioner has submitted a letter from the Consulate General of the United States dated May 12, 1980. See Court's Docket Doc. No. 33 (Exhibit 3). The letter states that the United States Department of State determined Juan's citizenship on January 22, 1958. Id. The letter also determined that Juan was a United States citizen by operation of the second paragraph of § 205. Id.

Here, Juan's citizen parent was his mother. *Ablang* deals with a citizen father and does not expressly discuss § 201(g)'s proviso for the retention of citizenship, and the Court has found no cases that discuss the operation of § 205's second paragraph of in conjunction with § 201(g).

In reaching its decision, the BCIS relied in part on the Foreign Affairs Manual ("F.A.M.") to decide that evidence did not show that Juan had been physically present in the United States 10 years prior to Petitioner's birth. The F.A.M. is a publication of the State Department. See Scales v. INS, 232 F.3d 1159, 1165 (9th Cir. 2000). In reference to the second paragraph of § 205, the F.A.M. states: "The citizenship status of persons who acquired U.S. citizenship at birth abroad out of wedlock to a U.S. citizen mother was not affected by legitimation after January 13, 1941, *and no retention requirement applied*." 7 F.A.M. § 1134.5-4(c) (emphasis added). The May 1980 letter from the Consulate General indicates that Juan's citizenship was determined on January 22, 1958 (when Juan was 13), by the State Department. Since the State Department determined Juan's citizenship and based it on the second paragraph of § 205, no retention requirement would have been imposed or required by the State Department. See 7

F.A.M. § 1134.5-4(c).  Given the State Department's interpretation of the second paragraph of § 205, the 5 year residence retention requirement of § 201(g) and the May 1980 letter from the Consulate General do not account for the missing years of physical presence required by § 1401(a)(7).

Additionally, under 8 U.S.C. § 1104(a), "The Secretary of State shall be charged with the administration and the enforcement of the provisions of this Act and all other immigration and nationality laws relating to . . . the determination of nationality of a person not in the United States."  This language was also found in the 1952 statute, which was applicable in 1958.  See 66 Stat. 174.  Because the State Department determined Juan's citizenship in January 1958, this indicates that Juan was not physically present in the United States from sometime at least in 1957 through January 22, 1958.  See id.; cf. Scales, 232 F.3d at 1165 (noting that because Scales was not a "person not in the United States," the State Department was not the agency entrusted with the determination of his citizenship).

Further, even assuming that the State Department imposed the 5 year retention requirement of § 201(g) prior to the May 1980 letter, there is no evidence that indicates when the 5 year requirement was met.  Juan had to meet the 5 year residence retention requirement between the ages of 13 and 21.  Juan was born on May 6, 1944, turned 13 on May 6, 1957, and turned 21 on May 6, 1965.  The 5 year residence retention requirement is 5 total years, which means that Juan could have been physically absent from the United States for 3 total years and still have met § 201(g)'s 5 year requirement.  Specifically as applied to the social security records, Juan could have been out of the United States in 1961 and 1962 (or out of the country in 1957, 1958, and 1959) and still have met the 5 year residence retention requirement.  There is simply no evidence to indicate which years comprised Juan's 5 year residence requirement.

Given the gaps in the evidence produced by Petitioner, the State Department's determination of Juan's citizenship, the State Department's interpretation of the second paragraph of § 205 and the BCIS's refusal to grant Petitioner a certificate of citizenship, and the numerous continuances to allow Petitioner to obtain additional evidence, the filings do not indicate that Juan was physically present in the United States for 10 years prior to September 15,

1967. The filings show that the requirements of § 1401(a)(7) have not been met.

**CONCLUSION**

Section 1401(a)(7) requires a parent's 10 year physical presence in the United States, which means Petitioner must show that Juan was in the United States for 10 years prior to 1967. The social security records include only the years 1960, 1963, 1964, 1965, 1966, and 1967; the years 1961 and 1962 are missing. Petitioner has presented no evidence regarding 1961 and 1962, nor any years prior to 1960. Petitioner's reliance on the operation of the 5 year residence retention requirement of § 201(g) is unavailing. The State Department determined Juan's citizenship. This fact indicates that the State Department did not impose the 5 year residence retention requirement, see 7 F.A.M. § 1134.5-4(c), and further indicates that Juan was absent from the United States prior to January 22, 1958. See 8 U.S.C. § 1104(a)(3). Further, even assuming that the State Department imposed § 201(g)'s 5 year residence retention requirement, it is possible to have fulfilled that requirement and still not account for several critical years between 1957 and 1965. In short, the evidence presented does not address the years 1957, 1958, 1959, 1961, and 1962 and does not support the contention that Petitioner is a United States citizen through operation of § 1401(a)(7). Petitioner's conviction is not infirm.

Accordingly, IT IS HEREBY ORDERED that Petitioner's requested relief under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.

**Dated: September 11, 2007**

**/s/ Anthony W. Ishii**
UNITED STATES DISTRICT JUDGE